ARTHUR I. LAWRENCE, JR. *v.* EDWARD KOZLOWSKI,
COMMISSIONER OF MOTOR VEHICLES

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and BARBER, Js.

706

Argued June 3—decision released September 28, 1976

*Francis X. Dineen,* with whom was *Joanne S. Faulkner,* for the appellant (plaintiff).

*Cornelius F. Tuohy,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

COTTER, J. The defendant commissioner, after a hearing pursuant to § 14-111 of the General Statutes, found that the plaintiff had caused or contributed to the death of Joseph Mortali, Sr., and ordered that the plaintiff's driver's license be suspended for a period of not less than one year. From a judgment rendered by the Court of Common Pleas dismissing the appeal the plaintiff appealed to this court, claiming error in the commissioner's ultimate conclusions, in his reliance on inadmissible evidence and in certain procedures followed by him with respect to the suspension hearing.

I

The plaintiff claims, inter alia, that the commissioner acted erroneously in violation of General Statutes § 14-111 (c). Pursuant to General Statutes

§ 14-111 (c)[1] the commissioner may suspend the license of an operator who is involved in a fatal motor vehicle accident only if the facts, as determined by the commissioner after a hearing, indicate the operator's responsibility for the accident, and only if the commissioner finds that the operator caused or contributed to the death through negligence, carelessness, or violation of chapters 246 or 248 of the General Statutes.

Judicial review of the commissioner's actions is governed by the Uniform Administrative Procedure Act[2] (hereinafter the UAPA), and the scope of that review is very restricted. As we stated in *DiBenedetto* v. *Commissioner of Motor Vehicles*, 168 Conn. 587, 589, 362 A.2d 840, "It is not the function of this court nor was it the function of the Court of Common Pleas to retry the case or substitute our

---

[1] General Statutes § 14-111 (c) reads as follows: "SUSPENSION OF LICENSE AFTER FATAL ACCIDENT. The commissioner shall not suspend the license of any operator concerned in any motor vehicle accident resulting in the death of any person solely because such death has occurred, unless the facts as ascertained by the commissioner, after a hearing, indicate responsibility on the part of such operator for such accident, and, if, after such hearing, the commissioner finds that such operator has caused or contributed to such death through the violation of any provision of this chapter or of chapter 248 or through negligence or carelessness, such suspension shall be for not less than one year. A motor vehicle parked in a manner permitted by law shall not be deemed to be concerned in such accident."

[2] The Uniform Administrative Procedure Act (General Statutes c. 54, §§ 4-166 through 4-189) provides uniform standards for judging all nonexempted agency actions, including suspension of drivers' licenses by the motor vehicle department. *Hickey* v. *Commissioner of Motor Vehicles*, 170 Conn. 136, 144, 145 n.2, 365 A.2d 403; see also *McDermott* v. *Commissioner of Children and Youth Services*, 168 Conn. 435, 439, 363 A.2d 103; *Murphy* v. *Berlin Board of Education*, 167 Conn. 368, 374, 355 A.2d 265.

The standards for judicial review under the UAPA are set out in General Statutes § 4-183, subsection (g) of which reads as follows: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court

or its judgment for that of the defendant. *Balch Pontiac-Buick, Inc. v. Commissioner of Motor Vehicles,* 165 Conn. 559, 563, 345 A.2d 520; see General Statutes § 4-183 (g). 'The commissioner's function is that of an administrative agency, although he acts in a quasi-judicial capacity. To render a decision, he must weigh evidence and reach conclusions.' [Citations omitted.] The conclusion reached by the defendant must be upheld if it is legally supported by the evidence. [Citations omitted.] The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence printed in the appendices to the briefs which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him. *Hart Twin Volvo Corporation v. Commissioner of Motor Vehicles,* 165 Conn. 42, 49, 327 A.2d 588." See *Paul Bailey's, Inc. v. Kozlowski,* 167 Conn. 493, 496–97, 356 A.2d 114.

The crucial factual issue in the present case was whether the plaintiff had maintained a proper lookout. The commissioner's conclusion that he was negligent in this regard was based on testimony and exhibits which were presented at a departmental hearing and which disclosed the following facts: At approximately 7:30 p.m. on September 7, 1971, the plaintiff was operating his

may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

pickup truck in an easterly direction on Columbus Avenue in New Haven. It was dusk; the weather was clear; the road was level, straight and dry; and there were no visible obstructions. His truck was in excellent mechanical condition, and even though streetlights were not lighted he had turned on his headlights.

Near the intersection of Liberty Street, Joseph Mortali, Sr., aged 87, was crossing Columbus Avenue from north to south. The plaintiff testified that he was driving at a speed of 20 to 25 miles per hour when he saw Mortali, who was wearing dark clothing and was "slumped down, looking down to the ground"; that as soon as he saw Mortali, he applied his brakes, but skidded "and struck him all in one instant. I had no chance to avoid turning right or left." Mortali was struck by the left front part of the plaintiff's truck, and the police officer investigating the accident testified that he found the plaintiff's truck stopped in the crosswalk, adding that he saw skidmarks about 55 feet in length. Mortali died several hours later as a result of injuries sustained in the accident.

It is apparent that these facts could support the commissioner's conclusion of failure to keep a proper lookout, and such a determination of negligence, depending as it must on the circumstances of each case, would not constitute error as a matter of law. See, e.g., *Pinto* v. *Spigner,* 163 Conn. 191, 195, 302 A.2d 266; *Cappiello* v. *Haselman,* 154 Conn. 490, 496–97, 227 A.2d 79; *Palombizio* v. *Murphy,* 146 Conn. 352, 357, 150 A.2d 825; cf. *DiBenedetto* v. *Commissioner of Motor Vehicles,* supra. However, as urged by the plaintiff, we must consider whether the commissioner's determinations were tainted by evidentiary or procedural error.

710

## II

The plaintiff claims that the commissioner's decision was based on legally incompetent evidence which was received over objection at the departmental suspension hearing held on August 29, 1972, in Wethersfield. The challenged exhibits are a court abstract containing the plaintiff's plea of nolo contendere to a charge of negligent homicide and the judgment of guilty rendered thereon; an accident report submitted to the commissioner by the investigating officer which stated in part that the plaintiff had been arrested in connection with the accident; and the coroner's report, in which he made findings of fact and concluded that the plaintiff had been responsible for Mortali's death through his failure to keep a proper lookout.

It is fundamental that administrative tribunals are not strictly bound by the rules of evidence and that they may consider exhibits which would normally be incompetent in a judicial proceeding, so long as the evidence is reliable and probative. *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 570, 345 A.2d 520; *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 546, 102 A.2d 366; *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals,* 140 Conn. 527, 536, 102 A.2d 316; 2 Am. Jur. 2d, Administrative Law, §§ 377, 382.

Under former § 4-178 (1) of the General Statutes,[3] rules of evidence applied to nonjury cases shall

---

[3] Former § 4-178 (1) of the General Statutes (1971 Public Acts, No. 854, § 13) which governs the admissibility of evidence in the instant case, was amended by 1973 Public Acts, No. 620, § 11, and the amended section governs the admissibility of evidence in contested cases arising on and after June 11, 1973. 1973 Public Acts,

be followed, "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded" and "[w]hen necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible thereunder may be admitted, except where precluded by statute, if it is a type commonly relied upon by reasonably prudent men in the conduct of their affairs." Cf. *Bernstein* v. *Real Estate Commission,* 221 Md. 221, 156 A.2d 657, appeal dismissed, 363 U.S. 419, 80 S. Ct. 1257, 4 L. Ed. 2d 1515, rehearing denied, 364 U.S. 855, 81 S. Ct. 35, 5 L. Ed. 2d 79; 2 Am. Jur. 2d, Administrative Law, § 381.

It is clear that in a judicial proceeding the plaintiff's nolo contendere plea and arrest would be inadmissible.[4] Furthermore, despite the broad latitude

No. 620, § 19. This amendment deleted the language cited in the text, and thus the amended statute is, if anything, more liberal than its predecessor, as the substitute language provides that "[a]ny oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence."

[4] A plea of nolo contendere is distinct from a plea of guilty inasmuch as the latter may be regarded as a verbal admission by the accused, and, as such, may be admissible in subsequent civil proceedings. It does not, however, conclusively establish negligence, and the accused is not precluded from explaining his plea. *Flynn* v. *Raccuia,* 146 Conn. 210, 212–13, 148 A.2d 763; *Dumond* v. *Denehy,* 145 Conn. 88, 89, 139 A.2d 58; *Moulin* v. *Bergeron,* 135 Conn. 443, 445, 65 A.2d 478.

By contrast, a plea of nolo contendere is merely a declaration by the accused that he will not contest the charge, and "even though followed by a finding of guilty and the imposition of a fine or other penalty, is not admissible, either as a verbal admission or an admission by conduct." *Casalo* v. *Claro,* 147 Conn. 625, 632, 165 A.2d 153. Nor is it admissible to affect a party's credibility, as evidence of an arrest, or as res judicata establishing that the plaintiff was engaged in a criminal act. *Krowka* v. *Colt Patent Fire Arm Mfg. Co.,* 125 Conn. 705, 713, 8 A.2d 5; see also Holden & Daly, Connecticut Evidence, § 103f. Pleas of nolo contendere may be entered "for reasons

given the commissioner with respect to the admission of evidence, we are also of the opinion that the nolo contendere plea should have been excluded from the administrative hearing as well, not only because it was of marginal probative value, but also because such pleas are often entered with the expectation that they will not be used against an accused in subsequent proceedings. See McCormick, Evidence (2d Ed.) § 265.

Similarly, the fact of arrest is of limited or no probative force and should not be relied upon by the commissioner in his deliberations even though he is required by statute to be informed of such "enforcement action taken." General Statutes § 14-108a (b). Finally, the conclusions of the coroner, although they must be forwarded to the com-

of convenience and without much regard to guilt and collateral consequences." McCormick, Evidence (2d Ed.) § 265, p. 636. Even though the plea may be regarded as a tacit admission, its inconclusive and ambiguous nature dictates that it should be given no currency beyond the particular case in which it was entered. *A. B. Dick Co. v. Marr,* 95 F. Sup. 83, 101 (S.D. N.Y.); *State v. Thrower,* 272 Ala. 344, 346, 131 So. 2d 420; *Federal Deposit Ins. Corporation v. Cloonan,* 165 Kan. 68, 90, 193 P.2d 656; *State v. Fitzgerald,* 140 Me. 314, 318, 37 A.2d 799; *State v. LaRose,* 71 N.H. 435, 439, 52 A. 943; *Honaker v. Howe,* 60 Va. (19 Gratt.) 50, 53; see 4 Wigmore (3d Ed.) § 1066; annot., 18 A.L.R.2d 1287, 1314 § 5; annot., 152 A.L.R. 253; Fed. R. Crim. Procedure 11 (e) (6).

Similarly, the portion of the police accident report containing the statement that the plaintiff had been arrested would not be admissible in a civil court proceeding. As Wigmore observed, "a mere arrest or indictment will not be allowed to be inquired after; since the fact of arrest or indictment is quite consistent with innocence, and since the reception of such evidence is merely the reception of somebody's hearsay assertion as to the witness' guilt. To admit this would involve a violation both of the hearsay rule and of the rule forbidding extrinsic testimony of misconduct." 3A Wigmore, Evidence (Chadbourn Rev.) § 980a, p. 835; see *Hayward v. Maroney,* 86 Conn. 261, 262, 85 A. 379; accord, 2 Wharton, Criminal Evidence (13th Ed. Torcia) § 477; annot., 20 A.L.R.2d 1421.

missioner pursuant to statute,[5] are merely his individual opinions and in no way bind the commissioner to the same result.

Nonetheless, our scope of review is statutorily circumscribed, and we may reverse or modify an agency order on the basis of an erroneous evidentiary ruling only if "substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." General Statutes § 4-183 (g) (5).

This so-called substantial evidence rule is similar to the "sufficiency of the evidence" standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords "a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.,* 306 U.S. 292, 299–300, 59 S. Ct. 501, 83 L. Ed. 660; see *Richardson* v. *Perales,* 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842; *Consolo* v. *Federal Maritime Commission,* 383 U.S. 607, 618–21, 86 S. Ct. 1018, 16 L. Ed. 2d 131; see also McCormick, Evidence (2d Ed.) § 352.

"The 'substantial evidence' rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention.

---

[5] See General Statutes § 14-109. Issues raised by the introduction into evidence of the coroner's report will be discussed infra, part III A.

It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [*Kopec* v. *Buffalo Brake Beam—Acme Steel & Malleable Iron Works,* 304 N.Y. 65, 106 N.E.2d 12.] The 'substantial evidence' rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . [*Board of Firemen's Relief & Retirement Fund Trustees* v. *Marks,* 150 Tex. 433, 242 S.W.2d 181; *Trapp* v. *Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424], and to provide a more restrictive standard of review than standards embodying review of 'weight of the evidence' or 'clearly erroneous' action. . . . [*Manlowe Transfer & Distributing Co.* v. *Department of Public Service,* 18 Wash. 2d 754, 140 P.2d 287.]" 2 Am. Jur. 2d, Administrative Law, § 621, p. 469; see also §§ 688–690; 73 C.J.S., Public Administrative Bodies and Procedure, § 223.

Under this test, "the mere erroneous admission . . . of evidence will not invalidate an order of the commission. Substantial prejudice must be affirmatively shown." *Damariscotta-Newcastle Water Co.* v. *Damariscotta-Newcastle Water Co.,* 134 Me. 349, 186 A. 799; see *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* supra, 568; see also *Sisto* v. *Civil Aeronautics Board,* 179 F.2d 47, 51–52 (D.C. Cir.); *Whitfield* v. *Simpson,* 312 F. Sup. 889, 895 (E.D. Ill.).

From our review of the record in the present case, we cannot say that the plaintiff has met this burden. Even if the challenged documents had been

excluded, the commissioner's conclusion was supported from other substantial evidence such as the testimony and the unchallenged exhibits, which disclosed that the plaintiff was driving in an easterly direction, and the decedent was walking in a southerly direction across the street when he was struck by the left front of the plaintiff's truck. The plaintiff also testified that he struck the decedent almost instantaneously, and the police officer testified that he observed skid marks some 55 feet in length at the scene of the accident. In view of this evidence, much of which was provided by the plaintiff himself and the accuracy of which is not contested, we cannot say that the commissioner improperly relied on the arrest and the nolo contendere plea in his determination that the plaintiff negligently failed to keep a proper lookout, nor does the record disclose any improper reliance upon the challenged exhibits.[6]

Accordingly, we find that the evidence was substantial enough to support the commissioner's con-

---

[6] The plaintiff argues that the commissioner relied upon these exhibits because the certification of the record, which lists all the exhibits introduced at the hearing, states that "said documents constitute the record upon which his decision was based." This is an inadequate basis for a finding of prejudicial reliance, however, because the unchallenged testimony and exhibits form an adequate basis for the commissioner's decision. Additionally, the record in *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles*, 165 Conn. 559, 345 A.2d 520, contained an identical statement, and we rejected a similar challenge to the admission of prior statutory violations because "[t]he record does not indicate that the commissioner considered as evidence of guilt the plaintiff's prior violations." Id., 568. "A court will not reject an agency finding that is supported by substantial evidence merely because the agency also incidentally mentions incompetent or irrelevant material. . . . Likewise, the possibility of prejudice from the admission of incompetent evidence may be dispelled by showing that the matter involved was not relied on." *Braniff Airways, Inc.* v. *Civil Aeronautics Board*, 379 F.2d 453, 466 (D.C. Cir.).

clusions, and the plaintiff has not sustained his burden of proving that he was prejudiced by the commissioner's reliance upon improper evidence.[7] *Reconstruction Finance Corporation* v. *Bankers Trust Co.*, 318 U.S. 163, 170, 63 S. Ct. 515, 87 L. Ed. 680.

## III

The plaintiff also contends that he was denied the right to present evidence and to cross-examine witnesses by the commissioner's failure to subpoena the coroner; to subpoena three eyewitnesses; and to change the location of the hearing from Wethersfield to New Haven, on the ground that these actions violated not only the UAPA but also the due process guarantees of the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[8]

---

[7] Even if we were of the opinion that the admission of evidence was prejudicial, we would be precluded from granting a new hearing by General Statutes § 4-185a, which states that "no decision or order by an agency in a contested case . . . shall be held invalid or deemed ineffective solely because of the agency's failure to comply with any requirement of sections 4-167, 4-168, 4-177 or 4-178 [of the General Statutes]. This provision shall apply to all agency actions taken between January 1, 1972, and the effective date of this act," i.e., June 11, 1973. The reason for this validating act is to provide additional time to agencies to adopt rules of practice and other necessary regulations and to conduct hearings in contested cases in accordance with the UAPA. See *Connecticut State Employees Assn., Inc.* v. *Connecticut Personnel Policy Board*, 165 Conn. 448, 334 A.2d 909.

[8] That a state's driver's license revocation proceedings must comport with due process standards was established in *Bell* v. *Burson*, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90; cf. *Goldberg* v. *Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287; *Morgan* v. *United States*, 304 U.S. 1, 58 S. Ct. 773, 82 L. Ed. 1129.

The rights to present evidence and to cross-examine witnesses in contested cases are also guaranteed by General Statutes §§ 4-177 (c) and 4-178 (3) respectively. It should be noted that these rights were not created de novo by the UAPA but predated its enactment.

## A

Prior to the August 29, 1972, suspension hearing, the plaintiff's counsel wrote the commissioner, requesting that the coroner be subpoenaed so that counsel might cross-examine him with respect to his report, which concluded that the plaintiff had been responsible for the decedent's death. The commissioner, by return letter, denied the request, explaining that the department "will only subpoena the Investigating Officer. Any other witness that you desire will have to be furnished by you or your client." The plaintiff challenges this decision on the ground that the coroner's conclusions were only an opinion which should have been subject to cross-examination at the administrative hearing. We cannot agree.

To assess this claim properly, a preliminary discussion of the coroner's report becomes necessary. Under General Statutes § 14-109,[9] the coroner "shall

As this court noted in *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 569, 345 A.2d 520, "the conduct of the [motor vehicle] hearing shall not violate the fundamentals of natural justice. That is, there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary or to be fairly apprised of the facts upon which the commissioner is to act." See *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* 165 Conn. 42, 47, 327 A.2d 588.

[9] "[General Statutes] Sec. 14-109. CORONER TO INVESTIGATE FATAL MOTOR VEHICLE ACCIDENTS. Each coroner shall make a finding showing the causes of, and responsibility for, each fatal accident within his jurisdiction in which a motor vehicle is involved and shall, within a reasonable time transmit a certified copy of his finding, without charge, to the commissioner. If such copy is not so transmitted within ten days, such coroner shall send to said commissioner a report containing such facts as he has been able to ascertain concerning such accident, and thereupon, or if such coroner fails to file such report, said commissioner may, in his discretion, restore the license

make a finding showing the causes of, and responsibility for, each fatal accident within his jurisdiction in which a motor vehicle is involved" and shall transmit a certified copy thereof to the commissioner.

The coroner in the instant case complied with the statute, and made findings of fact from testimony of the plaintiff, the investigating officer and three eyewitnesses. The report also contained evidence of the decedent's medical injuries, and concluded that the plaintiff was responsible for the fatality by failing to keep a proper lookout.

The coroner's report, although admittedly hearsay, is admissible, however, under General Statutes § 6-65 as a "public record" and the findings of fact contained therein are also properly admissible as competent evidence under the "public records" exception to the hearsay rule. *Hing Wan Wong* v. *Liquor Control Commission,* 160 Conn. 1, 10, 273 A.2d 709, cert. denied, 401 U.S. 938, 91 S. Ct. 931, 28 L. Ed. 2d 218; see General Statutes § 1-19.[10]

of any operator involved in such accident, which license was suspended in accordance with the provisions of subsection (c) of section 14-111."

Although the coroner in the instant case failed to submit a certified copy of his report, that defect is not fatal to the exhibit's admissibility, as the plaintiff argues, because this objection was not raised at the hearing, as required by General Statutes § 4-178 (1). Thus, the claim is not amenable to appellate review. Even if we were to consider the claim as properly before us, however, the absence of certification need not invalidate an otherwise properly admissible document. See *Hickey* v. *Commissioner of Motor Vehicles,* 170 Conn. 136, 141, 365 A.2d 403.

[10] The "public records" exception to the hearsay rule is "based upon the fact that the report of the public official can be relied upon for its trustworthiness. The public official may act only occasionally, but when he does act he knows and feels that he is acting under the sanction of his official place. Experience has led to the conclusion that it is ordinarily safe to rely upon the trustworthiness of a report made under such circumstances." *Ezzo* v. *Geremiah,* 107 Conn. 670, 680, 142 A. 461; see *State* v. *Torello,* 103 Conn. 511, 131 A. 429.

The coroner's factual findings, which are fully admissible under this exception to the hearsay rule, must be distinguished from his conclusions with respect to legal responsibility, which are admissible only as an expression of his opinion and cannot be regarded by the commissioner as ultimately dispositive on that issue. The coroner's findings of fact and conclusions are designed to aid the commissioner's decision, but they cannot be a substitute for the independent determination required under General Statutes § 14-111 (c). See *Branford Trust Co.* v. *Prudential Ins. Co.,* 102 Conn. 481, 487-88, 129 A. 379.

In the instant case we are satisfied from our review of the evidence produced at the motor vehicle department hearing that the coroner's report was not improperly used by the commissioner. Nor does the fact that the commissioner reached the same conclusion as the coroner indicate an improper delegation of the commissioner's authority.

The facts are not disputed. Thus it is not surprising that the coroner and the commissioner could, after conducting their respective independent hearings, arrive at the same conclusion with respect to the plaintiff's negligence. The coroner's conclusions may often, as a practical matter, be echoed by the commissioner, but that result is due more to the nature of the facts and circumstances of a given case than to an improper reliance upon the coroner's opinion, which the commissioner is free to disregard if he so chooses. Accordingly, we must conclude that the report was properly admitted into evidence at the departmental hearing.

The question of whether the conclusions of an investigator with respect to the cause of death or

negligence should be admissible at all has been widely debated, and has resulted in a division of authority among the states. 4 Wigmore, Evidence (Chadbourn Rev.) § 1671, with Connecticut opting for admissibility of such conclusions. *Blados* v. *Blados,* 151 Conn. 391, 397, 198 A.2d 213.[11] According to McCormick, the argument in favor of allowing such conclusions to be admitted stems from the fact that the investigator is usually skilled in the particular field and that his conclusions are reliable as a result. Nonetheless, the report and its conclusions are still to be regarded as not dispositive of the issue but merely as "laying the foundation for future official action which is likely to stimulate the same habitual accuracy in reporting facts known that underlies the exception for official records generally." McCormick, Evidence (2d Ed.) § 317 (c), p. 738.

We must have in mind, however, that this rule is itself an abridgement of the right to cross-examine the author of a report, and that it stems from the need for weighing or balancing the reliability of a report which must be prepared by a skilled public official with the countervailing need to subject these officials to cross-examination. "The necessity for the existence of such an exception [to the hearsay rule] is found 'in the practically unen-

---

[11] In *Blados* v. *Blados,* 151 Conn. 391, 397, 198 A.2d 213, a death certificate delivered to the coroner contained the statement by the medical examiner that the decedent "apparently fell from the rear stairs striking his head" and that he had a fracture of the skull. A majority of the court held that document admissible on the ground that it was the official statutory duty of the medical examiner to incorporate his opinion into the death certificate. See General Statutes § 19-536, in which the medical examiner's conclusions as to the cause or circumstances of death were rendered inadmissible in court proceedings except for statements set forth in the death certificate or autopsy report.

durable inconvenience of summoning public officers from their posts on the innumerable occasions when their official doings or records are to be proved in litigation'; and the general trustworthiness of such evidence is found in the circumstances under which the statements are made." *State* v. *Torello,* supra, 516–17; see 4 Wigmore, op. cit. § 1631.

Of course, opinions and conclusions as to cause and effect which are based on factual findings would not be admissible if denial of the right of cross-examination would result in the perversion of this rule of trustworthiness and reliability. *Gilbert* v. *Gulf Oil Corporation,* 175 F.2d 705, 710 (4th Cir.); *Franklin* v. *Skelly Oil Co.,* 141 F.2d 568, 572 (10th Cir.); *Kansas City Life Ins. Co.* v. *Meador,* 186 Okla. 397, 98 P.2d 20. However, no such deprivation of the right to cross-examination would result from the admission of the coroner's conclusions in the instant case.

The coroner, even if he testified at the motor vehicle department hearing, could provide no direct testimony as to the facts of the accident; he probably could describe only the inquest proceedings and possibly testify as to what facts he found persuasive in reaching his conclusion. We cannot conclude under the circumstances that the right of cross-examination is compelled by either the UAPA or the constitutional requirements of due process.

As noted previously, the commissioner, in considering the coroner's report, does not act as an appellate court in the sense that he must accept the coroner's conclusions if they are supported by the factual findings. Nor is the coroner's report "expert testimony" which can be properly evaluated

only through cross-examination. The coroner is, instead, another investigator who, like the commissioner, must hear and weigh evidence and make his conclusions therefrom. The plaintiff has an equal opportunity to appear before both the coroner and the commissioner, to establish facts, and to argue that he was not responsible for the fatality and that the coroner's conclusions were based on irrelevant or immaterial facts. A conclusion of negligence by the coroner in no way binds the commissioner, and the plaintiff is free to challenge the coroner's conclusions through the presentation of evidence from which the commissioner may draw an opposite conclusion.

The coroner and the commissioner often hear the same facts and arrive at the same result, especially in a case such as the instant one in which the plaintiff has conceded that his "appeal does not depend on questions of credibility of witnesses, or on the weight of evidence. There is no conflicting or inconsistent evidence, and both parties are in agreement as to the facts." Accordingly, we cannot say that the procedure by which the commissioner acts is constitutionally or statutorily infirm because under the circumstances of this case the coroner's conclusions may be admitted into evidence and considered as an expression of his opinion without the right of cross-examination. See *Consolo* v. *Federal Maritime Commission*, 383 U.S. 607, 619–26, 86 S. Ct. 1018, 16 L. Ed. 2d 131; *Hing Wan Wong* v. *Liquor Control Commission*, supra.

## B

We find no error in the plaintiff's remaining contentions that the commissioner erred in declining to subpoena three so-called eyewitnesses and in

refusing to change the venue of the hearing from Wethersfield to New Haven in order to allow these witnesses to appear voluntarily.[12]

In reviewing these claims, we note that the plaintiff's counsel requested the commissioner to subpoena only the coroner, not the three eyewitnesses. Even though this omission might bar the plaintiff from raising the issue on appeal, we are satisfied that the procedure followed in the instant case contravened neither the UAPA nor the plaintiff's constitutional rights. The UAPA contemplates that the hearing process will be informal, and there is no requirement that every witness must physically testify, as in a full-blown trial. In the instant case, the evidence which the eyewitnesses would have presented in person was placed before the commissioner through documents and questions by the plaintiff's counsel. The coroner's report contained an excerpt of their testimony, and the plaintiff's counsel had the plaintiff read portions of their testimony into the record at the inquest. Consequently, we cannot say that the plaintiff was deprived of any constitutional or statutory rights. It would have been preferable had the commissioner subpoenaed the witnesses of his own accord, but

[12] Under General Statutes § 14-110, the commissioner may issue subpoenas to compel a witness' appearance. There is, however, no statute authorizing the plaintiff's counsel to issue a subpoena to compel a witness' attendance at an administrative hearing. General Statutes § 51-85 would authorize the plaintiff's counsel, or a commissioner of the Superior Court, to issue a subpoena in connection with judicial proceedings, but that power is of no avail in respect to administrative hearings. Thus, the legislature has left control over witnesses to the commissioner. Because the commissioner has such broad powers, the failure to call a crucial witness may constitute prejudicial error in a different case, but we need not decide that issue in the instant case, inasmuch as there is no dispute over the facts and the testimony of the absent witnesses was presented to the commissioner in a satisfactory manner.

their testimony was presented to the commissioner in a manner sufficient to allow him to make a proper determination of the facts.

Nor was there error in the commissioner's refusal to hold the hearing in New Haven, which he is authorized to do under General Statutes § 14-111 (e). As observed earlier, the witnesses' testimony was available to the commissioner through means other than direct testimony, and thus we cannot say that the decision was erroneous or that the plaintiff's constitutional rights were violated. See *Raper* v. *Lucey,* 488 F.2d 748, 754 (1st Cir.) ; cf. *Andrews* v. *Norton,* 385 F. Sup. 672 (D. Conn.), aff'd sub nom. *Andrews* v. *Maher,* 525 F.2d 113 (2d Cir.).

There is no error.

In this opinion the other judges concurred.