[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the Commission on Hospitals and Health Care (hereinafter referred to as "commission") denying the application of Branford Surgery Center, Limited Partnership (hereinafter termed "BSC"), permission to establish a freestanding ambulatory surgery center in Branford, Connecticut. That application was dated November 4, 1988. BSC's application was consolidated for public hearing with two other applications for ambulatory surgery centers on the shoreline between New Haven and the Connecticut River. Public hearings were held on June 12, 1989, June 13, 1989 and June 20, 1989, as contested cases. In a decision announced July 13, 1989, the commission voted 2 to 1 to deny BSC's application. The commission also denied the other two applications that were before it.
BSC proposed to establish and construct a freestanding ambulatory surgery center in Branford which would consist of four operating rooms and supporting facilities.
This appeal is taken pursuant to Conn. General Statutes 4-183
and 19a-158.
In order to appeal from the final decision of an agency in a contested case one must be aggrieved. Gen. Stat. 4-183(a). In addition, Gen. Stat. 19a-158 provides that a health care institution or facility aggrieved by a final decision of the commission may appeal to the Superior Court. "Pleading and proof of aggrievement [is] . . . a prerequisite to the trial court's jurisdiction over the subject matter of the plaintiff's appeal." Fletcher v. Planning Zoning Commission, 158 Conn. 497, 501,264 A.2d 566 [1969]; Hughes v. Town Planning Zoning Commission,156 Conn. 505, 509, 264 A.2d 705 [1968]; Beckish v. Manafort,175 Conn. 415, 419, 399 A.2d 1274 (1978); Park City Hospital v. Commission on Hospitals Health Care, 210 Conn. 697, 702 (1989).
 The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, "the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision" Nader v. Altermatt, 166 Conn. 43, 51, 347 A.2d 89 CT Page 1127 [1974], and cases therein cited. Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 493 (1978).
 The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact. Nader v. Altermatt, supra, 53; New Haven v. Public Utilities Commission, 165 Conn. 687, 700, 345 A.2d 563; see 2 Cooper, State Administrative Law, pp. 538-41. Proof of aggrievement is an essential prerequisite to the court's jurisdiction of the subject matter of the appeal. Hughes v. Town Planning Zoning Commission, 156 Conn. 505, 509, 242 A.2d 705. Id. at 493. See also, Park City Hospital, supra, at 702.
This court finds that the plaintiff has met its burden and finds that the plaintiff is aggrieved by the commission's decision, and therefore has standing to pursue this appeal.
An administrative appeal is governed by Gen. Stat. 4-183.
 On appeal "[i]t is not the function of the court to retry the case." Williams v. Liquor Control Commission, 175 Conn. 409, 414, 399 A.2d 834
(1978). "[C]redibility of witnesses and the determination of issues of fact are matters within the province of the administrative agency." Id. Nor is the question "whether the trial court would have reached the same conclusion but [the question is] whether the record before the commission supports the action taken." Id.; Conley v. Board of Education, 143 Conn. 488, 492, 123 A.2d 747 (1956). "`Judicial review of the conclusions of law reached administratively is also limited.'" Griffin Hospital. v. Commission on Hospitals Health Care, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S.Ct. 781, 93 L.Ed.2d 819 (1986). The court's "`ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.'" Buckley v. Muzio, 200 Conn. 1, 3, 509 A.2d 489 (1986); see Griffin Hospital v. Commission on Hospitals Health Care, supra; Burnham v. Administrator, 184 Conn. 317, 322, 439 A.2d 1008 (1981); Lawrence v. Kozlowski, 171 Conn. 705, CT Page 1128 707-708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977); Riley v. State Employees' Retirement Commission, 178 Conn. 438, 441, 423 A.2d 87 (1979). The legal conclusions reached by the agency must stand, therefore, "if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." New Haven v. Freedom of Information Commission, 205 Conn. 767, 774, 535 A.2d 1297
(1988). All Brand Importers, Inc. v. Department of Liquor Control, 213 Conn. 184, 191-92 (1989).
 The "substantial evidence" rule governs judicial review of administrative factfinding under General Statutes (Rev. to 1987) 4-183(g). Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-41, 525 A.2d 940 (1987); Lawrence v. Kozlowski, 171 Conn. 705, 713-14, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977). An administrative finding is supported by "substantial evidence" if the record affords a "`"substantial basis of fact from which the fact in issue can be reasonably inferred."'" Huck v. Inland Wetland Watercourses Agency, supra, 541, quoting Lawrence v. Kozlowski, supra, 713. Such a standard of review allows less room for judicial scrutiny than does the "weight of the evidence" rule or the "clearly erroneous" rule. Huck v. Inland Wetlands Watercourses Agency, supra. In determining whether an administrative finding is supported by "substantial evidence," a court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part. Id., 540-42. An agency composed of physicians is entitled, furthermore, to rely on its own expertise within the area of its professional competence. Feinson v. Conservation Commission, 180 Conn. 421, 428, 429 A.2d 910 (1980); Jaffe v. State Department of Health, 135 Conn. 339, 349-50, 64 A.2d 330 (1949). Basically, an agency is not "required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair. Manor Development Corporation v. Conservation CT Page 1129 Commission, 180 Conn. 692, 697, 433 A.2d 999
(1980)." Huck v. Inland Wetlands Watercourses Agency, supra, 542. Briggs v. State Employees' Retirement Commission, 210 Conn. 214, 217, 218
(1989).
"Administrative decision-making necessarily includes at least five steps: (1) taking evidence; (2) weighing the accuracy and credibility of the evidence; (3) determining basic facts from a consideration of the evidence; (4) determining whether to infer the ultimate facts mentioned in the controlling statute from the basic facts; and (5) applying the statutory criteria to the findings of ultimate facts." American Broadcasting Co. v. Federal Communications Commission, 179 F.2d 437, 444 (D.C. Cir. 1949); Saginaw Broadcasting Co. v. Federal Communications Commission,96 F.2d 554, 559 (D.C. Cir., cert. denied sub nom.); Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938); New Jersey Bell Telephone Co. v. Communication Workers of America, N.J. 354, 375, 75 A.2d 721 (1950); Connecticut National Gas Corp. v. P.U.C.A., 183 Conn. 128, 136-137 (1981).
The criteria to be considered by the commission in its deliberations have been mandated by statute.
 "In its deliberations . . . the commission shall take into consideration and make written findings concerning each of the following criteria:
 (1) The relationship of the proposed to the State Health Plan;
 (2) the relationship of the proposed to the applicant's long-range plan;
 (3) the financial feasibility of the proposal, and its impact on the applicant's rates and financial condition;
 (4) the proposal's contribution to quality, accessibility and cost-effectiveness in health care delivery in the region;
 (5) the relationship of the proposed change to the applicant's current utilization statistics;
 (6) the teaching and research responsibilities of the applicant;
(7) the special characteristics of the CT Page 1130 patient-physician mix of the applicant;
 (8) the voluntary efforts of the applicant in improving productivity and containing costs;
 (9) and any other facts which this commission deems relevant, including . . . such factors as, but not limited to, the business interests of all owners, partners, associates, incorporators, directors, sponsors, stockholders and operators. . . .
Public Act. No. 88-9, Sec. 2 (numbering system added).
This statute was amended subsequent to the appeal to this court by Public Act No. 89-371, which became effective October 1, 1989, which does not substantially change the statute.
In paragraph 11 of its complaint, BSC claims its substantial rights have been prejudiced by the commission's decision in ten different ways:
 a. The Commission erred by failing to take into account the needs of residents in the shoreline area who currently have no convenient surgical facilities available to them, and by discriminating against such area by denying it the same access to health care as offered in other parts of the state.
 b. The Commission erred in denying the application and thereby restricting access to care, when the evidence was that the existing freestanding surgery center in New Haven denied access to a certain class of physicians, i.e., podiatrists, and served only a handful of Medicaid patients.
 c. The Commission's decision was contrary to the evidence, arbitrary, capricious, clearly erroneous and an abuse of its discretion. The Commission erroneously assessed "need" based on conjecture and hearsay, and in a manner which was inconsistent with the evidence and with its prior decisions relating to surgery centers, which have sought to encourage competition and expand opportunities for and access to outpatient surgery.
d. The Commission erred by not giving BSC an CT Page 1131 opportunity to provide revised information on financial feasibility based on Commissioner Wright's suggestion that BSC's surgical center be approved with a lesser number of operating rooms than were initially applied for. Alternatively, the Commission erred in rejecting BSC's application outright rather than approving the facility with a lesser number of operating rooms, which would have been consistent with the Commission's past practices.
 e. The hearing was conducted in a manner contrary to the requirements of the statutes, regulations, and requirements of due process and in particular Section 4-179(a), C.G.S., in that BSC was denied the opportunity to file exceptions and present briefs and oral argument on all issues involved after the preparation of the proposed final decision. Such opportunity was required by Section 4-179(a) by virtue of the fact that none of the Commissioners were present during the entire hearing, and no transcript was prepared for them to read.
 f. The Commission's procedure, actions and decision amount to a deprivation of BSC's property without due process of law in violation of Article 1, Section 8 of the Connecticut Constitution and 14th Amendment to the United States Constitution.
 g. The Commission considered matters which were legally or factually irrelevant.
 h. The Commission permitted the introduction of improper matters into the record.
 i. The Commission did not consider all the evidence of record and considered evidence not of record and not officially noticed or predicated in its decisions.
 j. The Commission, by acting in a manner that showed favoritism toward the existing New Haven facilities, by disregarding the needs of residents of the shoreline area of Connecticut east of New Haven and the underserved Medicaid population, and by conducting itself in a manner and basing its decision on criteria and rationale inconsistent with prior decisions, CT Page 1132 failed to proceed in a temperate, judicial manner without prejudgment, but rather proceeded in violation of basic procedures and safeguards, in violation of the UAPA, Sections 19a-153, 19a-154 and 19a-155 of C.G.S., Article 1, Section 8 of the Connecticut Constitution and the 14th Amendment to the Constitution of the United States.
The record in this case takes up ten volumes and contains 4012 pages of record and 473 pages of transcripts of testimony.
The decision issued by the commission comprises 27 pages, and contains 75 findings of fact and discussions and conclusions on each of the statutorily mandated considerations pursuant to Public Act No. 88-9, Sec. 2, the commission was bound to consider in its decision.
This court has reviewed the record and the transcript and finds support for each of the commission's conclusions. "A reviewing shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Gen. Stat.4-183(g); Hospital of St. Raphael v. Commission on Hospitals 
Health Care, 182 Conn. 314, 318, 438 A.2d 103 (1980); Hansen v. Norton, 172 Conn. 292, 294, 374 A.2d 230 (1977);" Connecticut Natural Gas Corporation v. P.U.C.A., 183 Conn. 128, 134 (1981).
BSC's argument on appeal in essence consists of three items: 1) Finding of Fact No. 37, R. 3995, "Testimony from Dr. Norman Kaplan indicated that he would prefer to perform ambulatory surgery in facilities where his patients are receiving care": 2) A claim that not all the commissioners were present at all times during the hearings and were in violation of Gen. Stat. 4-179(a); and 3) the Commission exhibited a pattern of favoritism to the information supplied by the interviewers and did not favor the plaintiff's evidence.
In reviewing these claims, this court is mindful of the commission's statutory change and the comments of our Supreme Court:
 The commission is specially constituted by the Legislature to coordinate, throughout the state, the efficient utilization of hospital resources in an effort to contain the burgeoning cost of health care. The courts cannot hope to duplicate the work of the commission, or to make hospital budget determinations with the same level of expertise as that possessed by the commission staff. We therefore approach the CT Page 1133 issues raised in this appeal both with an awareness of the limitations inherent in the review process itself, and with due deference to the broad grant of regulatory authority which has been delegated to the commission by our Legislature. See Gen. Stat. 19a-150, 19a-151, 19a-153(a), 19a-154(a), 19a-156(a). Griffin Hospital v. Commission on Hospitals and Health Care, 200 Conn. 489, 497-98, 512 A.2d 199 (1986).
Respecting this direction we now turn to BSC's claims.
Dr. Kaplan's Testimony
BSC argues that the commission included in the record a statement from Dr. Norman Kaplan indicating that he would prefer to perform ambulatory surgery in a facility where his patients are receiving care. Dr. Kaplan is a New Haven surgeon. In addition, letters from other area physicians were accepted by the commissioner. But, "[t]here is, . . ., no specific prohibition against hearsay evidence in the Uniform Administrative Procedure Act." Tomlin v. Personal Appeal Board, 177 Conn. 344, 348 (1979). See also Cassella v. Civil Service Commission, 4 Conn. App. 359,362-63 (1985), aff'd. 202 Conn. 28 (1985). Yet in this case BSC claims that the commission has regulations, Reg. Conn. Agencies, Sec. 19a-160-40(b) and 19a-160-40(d), governing this area and the commission failed to follow its own rules. The normal rule is that agencies must observe their own regulations. Lupo v. Norton, Warden, Federal Correctional Institution, Danbury, 371 F. Sup. 156,161 (USDA, D.Conn., Newman, J.) (1974). BSC misstates the regulations. Both cited sections apply to proponents or at least party testimony. Reg. Conn. Agencies Sec. 19a-160-40(a) is really more in point. That section provides:
 "The commission may by order of the presiding officer require any party or other participant that proposes to offer substantive, technical or expert testimony, to prefile such testimony in written form on such date before or during the public hearing as the presiding officer shall direct. Such prefiled written testimony shall be received in evidence with the same force and effect as though it were stated orally by the witnesses who have given the evidence, provided that each witness shall be present at the hearing at which the prefiled written testimony is offered shall adopt the written testimony under oath, and shall make available for cross examination as directed by the presiding CT Page 1134 officer. Prior to its admission such written testimony shall be subject to objection by parties." (emphasis added)
The last sentence in this section is also the last sentence of Sec. 19a-160-40(d).
The matter in question was not: submitted by BSC or by a party, but was submitted by Temple Medical Center, TSR Limited Partnership, and Hospital of St. Raphael, intervenors. An intervenor is a "person admitted by the presiding officer as a participant in a contested case who is not a party." Reg. Conn. Agencies Sec. 19a-160-12-(g). "`Party' means each person named or admitted by the commission as a party to a contested case, whose legal rights, duties or privileges of a party are determined by the commission by the decision therein." Reg. Conn. Agencies Sec.19a-160-12(f).
The transcript at the start of the intervenor's presentation states:
 LEVETT (attorney for Temple Medical Center, TSR Limited Partnership and Hospital of St. Raphael): —
 As a housekeeping matter preliminarily, we would like to offer 50 letters of support from New Haven area physicians who have successfully used the New Haven ambulatory surgical facilities, without as they put it, unreasonable delays and also, a letter from a patient who has used the ambulatory facilities without any problem or difficulty and I'd like them to be marked as intervenor's exhibit 1. . . .
WATTERS (Commissioner and presiding officer):
 All right. There are 51 letters in support, 50 from physicians and 1 from a patient. Vol. X Record at page 58.
The petitioner BSC failed to object to the offer. By failing to object, BSC has waived its right to object. Welch v. Zoning Board of Appeals, 158 Conn. 208, 213-14 (1969); Henderson v. Department of Motor Vehicles, 202 Conn. 453, 462 (1987); Lloyd v. Gerl, 13 Conn. App. 641, 644 (1988). By not objecting to the introduction of the letters, BSC did not afford the intervenors the opportunity to have the letter writers testify so that BSC could cross examine the authors.
"Where hearsay evidence is admitted without objection, the CT Page 1135 trier of facts may give such weight to it as he deems it is worth." Stanley Works v. New Britain Redevelopment Agency,155 Conn. 86, 96, 230 A.2d 9 [1967]; Plukowsky v. New Haven, 151 Conn. 337,343, 197 A.2d 645 [1964]; Brown v. Rahr, 149 Conn. 743,182 A.2d 629 [1962]; Sizer v. Lenney, 146 Conn. 457, 151 A.2d 889
[1959]; Cutlip v. Connecticut Motor Vehicle Commissioner,168 Conn. 94, 98 (1975).
The issue here is not the issue where hearsay statements were admitted over objection as was before the courts in the leading case of Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420,28 L.Ed.2d 842 (1971); See also Carlson v. Kozlowski, 172 Conn. 263,267-8 (1977); Cassella v. Civil Service Commission, 4 Conn. App. 359,364-8 (1985); Altholtz v. Dental Commission, 4 Conn. App. 307,311-12 (1985). In any case the letters were cumulative to other testimony which was subject to cross examination and did not substantially prejudice BSC.
Absence of a Commissioner During the Hearing
BSC claims that not all of the commissioners were present during the hearing. There is nothing in the record to substantiate this claim. BSC sites Gen. Stat. 4-179(a). The hearings in this case were held June 12, June 13, and June 20, 1989. The decision was dated July 13, 1989. The statute cited by BSC did not become effective until July 1, 1989 and was not applicable to any proceeding which was commenced prior to July 1, 1989. Gen. Stat. 4-185. The applicable former statute, Gen. Stat. 4-179, and the applicable commission rule, Reg. Conn. Agencies, Sec. 19a-160-45, provide for a situation where "a majority of the commissioners have not heard the case or read the record." There is nothing in the record to substantiate that such occurred in this case.
 The Commission Exhibited a Pattern of Favoritism to the Information Supplied by the Intervenors and Did Not Favor BSC's Evidence.
This court has reviewed each of the BSC claims, the final decision of the agency, and the record including the transcript. "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Gen. Stat. 4-183(g). (For matters commenced after July 1, 1989, the section is 4-183(j)). All the issues attacked by BSC are on questions of fact. BSC has failed to demonstrate that this decision is contrary to the evidence, arbitrary, capricious, clearly erroneous and an abuse of its discretion. Just because the commission did not find the facts in a case of disputed evidence that would favor BSC's petition does not establish the commission was biased against the petitioner. As stated earlier CT Page 1136 in this memorandum, the commission considered and made findings and decisions on all the criteria that the statutes required it to consider. There was ample evidence in the record to sustain the commission's decision.
The appeal is denied. The decision of the agency affirmed.
JOSEPH B. CLARK, Judge