### ROBERT B. HICKEY *v.* COMMISSIONER OF MOTOR VEHICLES

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and LONGO, JS.

Argued October 10, 1975—decision released January 27, 1976

*Richard H. Kosinski,* for the appellant (plaintiff).

*Cornelius F. Tuohy,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

LONGO, J. The facts material to this appeal are essentially undisputed. The plaintiff, Robert B. Hickey, a resident and licensed driver of the state of Connecticut, was arrested in the state of Maine and subsequently convicted of operating a motor vehicle while under the influence of intoxicating liquor. On appeal to the Superior Court of Maine, the conviction was upheld and the plaintiff was barred from operating a motor vehicle in that state for a period of four months. Photostatic copies of the notice of suspension and of the abstract of the record of conviction were sent by the state of Maine to the defendant, the commissioner of motor vehicles of Connecticut. On January 31, 1974, on the basis of these documents and without a hearing, the

plaintiff's Connecticut operator's license was suspended for an indefinite period by the defendant commissioner, who based his action on § 14-111 (a)[1] of the General Statutes. Thereafter, on February 25, 1974, the plaintiff requested that the defendant commissioner hold a hearing for reinstatement of his license. At the conclusion of the hearing on April 6, 1974, the defendant commissioner reinstated the plaintiff's license pending a decision on his application for reinstatement. The defendant commissioner's decision was rendered on August 27, 1974. By that decision, the plaintiff's operator's license was suspended for a period of one year, with the provision that he would be eligible for reinstatement after six months upon the successful completion of a course for operators who have had their licenses suspended for operating under the influence of intoxicating liquor. The plaintiff appealed the suspension order to the Court of Common Pleas, which dismissed the appeal. From that judgment, the plaintiff has appealed to this court.

The plaintiff assigns as error the holding of the trial court that (1) the defendant commissioner has the authority to suspend a Connecticut operator's license for an offense which occurs outside the borders of this state; (2) the defendant commissioner could consider the photostatic copies of documents

---

[1] "[General Statutes] Sec. 14-111. SUSPENSION OR REVOCATION OF REGISTRATION, LICENSE OR RIGHT TO OPERATE. (a) POWERS OF COMMISSIONER. RETURN OF REGISTRATION OR LICENSE. No provision of this chapter shall be construed to prohibit the commissioner from suspending or revoking any registration or any operator's license issued under the provisions of any statute relating to motor vehicles, or from suspending the right of any person to operate a motor vehicle in this state, or from suspending or revoking the right of any nonresident to operate, or the right to any operation of, any motor vehicle within this state, for any cause that he deems sufficient, with or without a hearing. . . ."

sent to him by the state of Maine as evidence of the out-of-state conviction; (3) it was within the scope of the defendant commissioner's authority to order a period of suspension longer than and not concurrent with the period of suspension ordered in the state of Maine; and (4) it was not necessary for the defendant commissioner to hold a hearing prior to the suspension of the operator's license.

# I

There is no merit to the plaintiff's first assignment of error. Many state legislatures have enacted statutes authorizing the suspension or revocation of an operator's license for traffic violations committed out-of-state. An example of such a statute is N.Y. Vehicle and Traffic Law § 510 (McKinney 1970); for others, see annot., 87 A.L.R.2d 1019. In Connecticut, under § 14-111 (a) of the General Statutes, the commissioner of motor vehicles may suspend or revoke any Connecticut operator's license "for any cause that he deems sufficient." The legislature enacted the statutes governing the operation of motor vehicles, including § 14-111, for the protection of the lives and property of the citizens of this state. In matters concerning public safety, "the legislative department in the use of its police power is the judge, within reasonable limits, of what the public welfare requires." *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21, cited in *Cutlip* v. *Connecticut Motor Vehicles Commissioner,* 168 Conn. 94, 100, 357 A.2d 918. In an age of rapid and extensive interstate travel, a driver who by his actions endangers citizens in a sister state may also be considered a hazard to the safety of those on the roadways of his home state. Therefore, we conclude

that the commissioner of motor vehicles has the authority, under General Statutes § 14-111 (a), to suspend or revoke an operator's license for traffic violations occurring in another state.

In this case, the courts of Maine made a determination of the plaintiff's guilt of the particularly dangerous offense of driving while under the influence of intoxicating liquor. Had that conduct occurred in Connecticut, it would have violated § 14-227a of the General Statutes. The Connecticut suspension, however, is based on § 14-111 (a), which is concerned with the prevention of accidents rather than the punishment and penalizing of persons responsible. Therefore, the exercise by the defendant commissioner of his powers under § 14-111 (a) does not give effect to a penal law outside the jurisdiction of the state of Connecticut, as the plaintiff has argued.

## II

We next consider the plaintiff's claim that the trial court erred in holding that the defendant commissioner could consider photostatic copies of both the abstract of the record of conviction in Maine and of the notice of suspension by the state of Maine which had been sent to the plaintiff. The plaintiff objected to the admission of these copies into evidence at the administrative hearing held on April 6, 1974, on the ground that they were not properly exemplified. The plaintiff bases his claim on 28 U.S.C. §§ 1738 and 1739. Those sections are designed, however, to ensure that certain acts, proceedings, and records be given the same full faith and credit by the courts and offices of all states as is given in the courts and offices from which they are taken. The doctrine of full faith and credit is

not at issue here. What is at issue is whether the materials sent by the state of Maine to the defendant constituted competent evidence of the out-of-state conviction.

Chapter 54 of the General Statutes contains provisions governing proceedings before boards or officers of administrative agencies. Under § 4-178, in a contested case, "[a]ny . . . documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence. . . . [D]ocumentary evidence may be received in the form of copies . . . ." This section reflects prior holdings of this court and the law in other states that administrative agencies are not strictly bound by technical rules of evidence. *Parsons* v. *Board of Zoning Appeals*, 140 Conn. 290, 292, 99 A.2d 149; see 2 Am. Jur. 2d, Administrative Law, § 378 and the cases cited therein. In the particular situation considered here, the rule generally followed is that documents giving notice of conviction of a traffic violation, forwarded by the state in which the violation occurred, need not be formally exemplified to sustain the suspension or revocation of an operator's license by the home state. See *Witsch Motor Vehicle Operator License Case*, 194 Pa. Super. 384, 168 A.2d 772; 7 Am. Jur. 2d 681, Automobiles and Highway Traffic, § 118; annot., 87 A.L.R.2d 1019, 1023, 1032.

In this case a photostatic copy reproduced the original abstract, which bore the name and address of the plaintiff, the nature of the offense, the judgment rendered, the suspension of the right to operate in Maine, and certification by the clerk as a true abstract of the Maine District Court. The

copy of the notice of suspension showed the record of conviction upon appeal and was signed by the secretary of the state. Thus, the photostatic copies provided adequate notice of the conviction of the plaintiff for the offense of operating a motor vehicle while under the influence of intoxicating liquor. The trial court was correct in concluding that the photostatic copies of the two documents were properly admitted into evidence at the administrative hearing for consideration by the defendant commissioner.

## III

The plaintiff has argued that a suspension under § 14-111 (a) must be of the same duration as and concurrent with the suspension imposed by the state where the violation occurred. We do not agree. Having given the commissioner broad powers under § 14-111 (a) concerning the suspension and revocation of licenses, including the authority to suspend for an out-of-state violation, the legislature has left the determination of the length and effective date of such a suspension to the commissioner's discretion. In this case there has been no abuse of that discretion.

There is guidance as to the appropriate duration of this suspension in General Statutes § 14-111 (b). By the provisions of that section, a driver convicted under General Statutes § 14-227a of driving under the influence may have his operator's license suspended "for a period of not less than one year." This plaintiff was convicted under a Maine statute, which is similar to General Statutes § 14-227a, of driving while intoxicated. Therefore, the commissioner's determination that suspension be for a period of one year is not improper, notwithstanding

the fact that the period in the state of Maine was of four months duration. It is also not required that the suspension period begin on the same date in both states; a reasonable time discrepancy may occur. The commissioner must have sufficient time in which to receive notice of the violation and to afford the driver a hearing prior to the suspension of his Connecticut operator's license, a requirement discussed below. The trial court was correct in holding that the duration and effective date of the Connecticut suspension period need not coincide with that of Maine.

This question of duration and concurrency of suspension periods has been considered a number of times by the Pennsylvania courts, and several of those cases are cited by both the plaintiff and the defendant. The rule in those cases is that duration and effective date of suspension need not be the same in the two states. See *Garbush Motor Vehicle Operator License Case,* 194 Pa. Super. 396, 169 A.2d 599; *Josephson Motor Vehicle Operator License Case,* 194 Pa. Super. 394, 169 A.2d 598; *Levy Motor Vehicle Operator License Case,* 194 Pa. Super. 390, 169 A.2d 596. Since these cases were decided, however, the Pennsylvania legislature has enacted a requirement that the suspension period in the home state shall be limited in duration to the term of the original suspension, and in no event is to extend beyond the expiration date in the state where the violation occurred. Pa. Stat. Ann. tit. 75, § 618 (e). While these cases are chiefly of historical interest, we do note that prior to an explicit indication of the legislative intent to the contrary, those decisions were in accord with our holding in this case. See annot., 87 A.L.R.2d 1019, 1027–29, for a discussion of the law of Pennsylvania on this point.

## IV

The plaintiff's final claim of error is the decision of the trial court that it was not necessary for the defendant commissioner to hold a hearing prior to the initial suspension of the plaintiff's license on January 31, 1974. The trial court concluded that requirements of procedural due process had been met by the hearings before the courts of the state of Maine.

The judicial and appellate proceedings in Maine notwithstanding, we are of the opinion that the commissioner did act illegally in suspending the plaintiff's license effective January 31st. The United States Supreme Court has determined that a license cannot be suspended without "that procedural due process required by the Fourteenth Amendment." *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90. A state "must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." *Bell* v. *Burson,* supra, 542. This court has also set out that explicit rule that "an appropriate hearing is necessary *before* a governmental agency may, on the basis of an alleged state of facts, impair the means of a person's livelihood, whether the means be wages or welfare benefits, price rates or a right pursued under a license." (Emphasis supplied.) *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* 165 Conn. 42, 45, 327 A.2d 588. In Connecticut, these considerations of due process are set out in the Uniform Administrative Procedure Act, General Statutes §§ 4-166—4-189, the act which "provides for uniform standards by which all non-exempted agency action

is to be judged." *McDermott* v. *Commissioner of Children & Youth Services,* 168 Conn. 435, 441, 363 A.2d 103.[2]

Although the suspension order issued in January was improper, the order issued on August 27, 1974, did follow a full hearing, as required by law. The trial court was therefore correct in rendering a judgment which dismissed the plaintiff's appeal, for that appeal was taken from the order issued on August 27, after a full hearing. It is required that the plaintiff receive credit for the period of time his license was suspended under the January order. From the record before us, we are unable to determine whether in fact such credit was given by the commissioner in the later order of suspension, following the contested hearing.

There is no error.

In this opinion the other judges concurred.

---

[2] The defendant commissioner is an "agency" as defined in § 4-166 (1) and, as such, his official acts are governed by the UAPA. Section 4-182 (c) sets out the procedure to be followed in the suspension of licenses: "No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined." So that § 4-182 (c) shall be consistent with provisions of the state and federal constitutions and the explication of those provisions by this court and the United States Supreme Court, the "opportunity to show compliance" must be afforded in the form of a hearing, complying with other provisions of the UAPA as may be relevant. See General Statutes §§ 4-177 and 4-178.