BARBARA KOSTRZEWSKI *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 17359)

Foti, Landau and Hennessy, Js.

Argued September 17, 1998—officially released March 23, 1999

*Jeffrey D. Brownstein*, with whom, on the brief, was *Gregory A. Thompson*, for the appellant (plaintiff).

*Robert L. Marconi*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiff, Barbara Kostrzewski, appeals from the judgment of the trial court dismissing her appeal from the decision of the defendant, the Connecticut commissioner of motor vehicles. The commissioner suspended the plaintiff's Connecticut license to operate a motor vehicle pursuant to General Statutes § 14-111c,[1] the driver license compact (compact), following her conviction in Florida for operating a motor vehicle while under the influence of alcohol.

---

[1] General Statutes § 14-111c provides in relevant part: "The driver license compact is hereby enacted into law and entered into with any and all of the states legally joining therein in the form substantially as follows:

\* \* \*

ARTICLE III

Reports of Conviction

The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the

The plaintiff claims that the trial court improperly (1) upheld the hearing officer's admission of the Florida traffic citation and report of conviction into evidence and allowed the plaintiff's conviction, which was based on a plea of nolo contendere, to be considered as a basis for suspending her license under the compact, (2) held that the compact was constitutional, (3) held that the enforcement of the compact did not violate the equal protection clause of the Connecticut constitution, (4) held that the Connecticut and Florida statutes are substantially similar for purposes of the compact, (5) held that the report of conviction from Florida complied with the requirements of the compact and (6) held that the suspension of the plaintiff's license did not violate the double jeopardy clause of the United States constitution and the Connecticut constitution. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff, a holder of a Connecticut motor vehicle operator's license, was arrested in

licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted; describe the violation specifying the section of the statute, code or ordinance violated; identify the court in which action was taken; indicate whether a plea of guilty or not guilty was entered, or the security; and shall include any special findings made in connection therewith.

ARTICLE IV

Effect of Conviction

(a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to article III of this compact, as it would if such conduct had occurred in the home state, in the case of convictions for:

\* \* \*

(2) Driving a motor vehicle while under the influence of intoxicating liquor or narcotic drug, or under the influence of any other drug to a degree that renders the driver incapable of safely driving a motor vehicle;

\* \* \*

(c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subsection (a) of this article, such party state shall construe the denominations and descriptions appearing in said subsection (a) as being applicable to and

Florida for operating a motor vehicle while under the influence of alcoholic beverages in violation of Florida Statutes § 316.193. The plaintiff pleaded nolo contendere to the charge and, as a result, the Florida trial court found her guilty of operating a motor vehicle under the influence of alcoholic beverages.

Pursuant to the compact, of which both Florida and Connecticut are member states, the Florida authorities sent notification of the plaintiff's Florida conviction to the commissioner. Upon receipt of the notification from Florida, the commissioner issued the plaintiff a notice of hearing to determine whether her Connecticut license should be suspended as a result of her Florida conviction. On November 1, 1996, the commissioner conducted a hearing on the license suspension before a hearing officer. The plaintiff was present at the hearing and was represented by an attorney.

Subsequent to the hearing, the hearing officer found that the plaintiff was arrested and convicted in Florida for operating a motor vehicle while under the influence of alcohol and that this conviction remains on the plaintiff's driver history. The hearing officer concluded that, under the compact, "any conviction in Florida for driving under the influence shall result in Connecticut treating the conviction as if it had occurred [in Connecticut]." The hearing officer further concluded that a conviction in Connecticut for operating a motor vehicle while under the influence of alcohol would result in the suspension of a motor vehicle operator's license for one year. Accordingly, the hearing officer ordered that the plaintiff's Connecticut license be suspended for one year.

The plaintiff appealed to the Superior Court pursuant to the Uniform Administrative Procedure Act (UAPA),

identifying those offenses or violations of a substantially similar nature, and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article. . . ."

General Statutes § 4-183. The Superior Court rendered judgment dismissing the plaintiff's appeal. This appeal followed. Other facts will be discussed where relevant to the issues on appeal.

I

The plaintiff first claims that the trial court improperly upheld the hearing officer's admission of a report of conviction and traffic citation, marked as state's exhibit B, into evidence and allowed the plaintiff's conviction, which was based on a plea of nolo contendere, to be considered as a basis for suspending her license under the compact.

"Judicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . We look to see if the [trial] court reviewing the administrative agency acted unreasonably, illegally, or in abuse of discretion. . . . *Dortenzio* v. *Freedom of Information Commission*, 48 Conn. App. 424, 430, 710 A.2d 801 (1998)." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 51 Conn. App. 100, 104, 720 A.2d 268 (1998).

A

The plaintiff first argues that exhibit B was not sufficiently reliable or trustworthy and, therefore, its admission in evidence substantially prejudiced the plaintiff's rights. Specifically, the plaintiff argues that the documents contained in exhibit B are not in compliance with article III of the compact because there was no proof that her conviction in Florida was reported by the "licensing authority" in Florida, as required, because there was no signature or logo evidencing that the documents were reported by the Florida department of motor vehicles.

The following additional facts are necessary to the resolution of this issue. The trial court found that exhibit B, as introduced by the state at the administrative hearing, included "the original traffic ticket citing the plaintiff on the drunk driving charge." The Florida "DUI Uniform Traffic Citation" provides the date and time of the offense, the statute violated and the blood alcohol level of the plaintiff, and contains the signatures of the arresting officer and the plaintiff. The other side of the document is an abstract of the court disposition and indicates the name of the presiding judge and bears an original signature, although there is no indication of the signer's title or position. The information from the Florida trial court indicates that the plaintiff pleaded nolo contendere, was found guilty, fined and placed on probation and had her driving privileges revoked in Florida for a period of six months.

The trial court concluded that the hearing officer properly admitted the document into evidence and used it to support his final decision because the document bore sufficient indicia of reliability, including the signature of the plaintiff. The trial court further concluded that it is of no significance that "there is no evidence to show whether it was the Florida department of motor vehicles or the Florida court that forwarded it to Connecticut."

Insofar as the plaintiff is arguing that exhibit B itself is inadmissible, we note that "[a]dministrative tribunals are not strictly bound by the rules of evidence and . . . they may consider evidence which would normally be incompetent in a judicial proceeding, so long as the evidence is reliable and probative. . . . There is, moreover, no specific prohibition against hearsay evidence in the [UAPA], which provides that [a]ny oral or documentary evidence may be received, but [that] the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence."

(Citations omitted; internal quotation marks omitted.) *Cassella* v. *Civil Service Commission*, 4 Conn. App. 359, 362, 494 A.2d 909 (1985), aff'd, 202 Conn. 28, 519 A.2d 67 (1987).

We conclude, as did the trial court, that the document bears sufficient indicia of reliability, including the signature of the plaintiff. The information contained on the uniform traffic citation was not disputed by the plaintiff[2] nor was it irrelevant or immaterial.

Insofar as the plaintiff is arguing that the compact requires that the conviction be provided by the "licensing authority"[3] and, if not, it is inadmissible as evidence of a conviction, we note that "[w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must

---

[2] The trial court also noted that the plaintiff appended to her petition in the trial court appeal a copy of the Florida court's written order setting forth the conviction following the plaintiff's nolo contendere plea and the placing of the plaintiff on probation. The trial court indicated that the document was also signed by the plaintiff and contained information consistent with that set forth in exhibit B. The trial court concluded that this "constitutes an admission by the plaintiff" and "essentially nullifies any argument that the document admitted in evidence at the hearing is not reliable."

[3] Article III of the compact provides in relevant part that "[t]he licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. . . ."

stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted.) *State Board of Labor Relations* v. *Freedom of Information Commission*, 244 Conn. 487, 494, 709 A.2d 1129 (1998).

Because the information is reliable and probative its admissibility into evidence by the commissioner was proper despite the fact that there is no evidence to show whether it was the Florida department of motor vehicles or the Florida trial court that forwarded the document to the commissioner. We conclude, therefore, that the trial court acted reasonably and did not abuse its discretion in upholding the decision of the hearing officer.

## B

The plaintiff next claims that the her plea of nolo contendere cannot be the basis for a suspension of her license.[4] Specifically, the plaintiff argues, relying on *Lawrence* v. *Kozlowski*, 171 Conn. 705, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977), that a plea of nolo contendere and the arrest report are inadmissible even in an administrative hearing and, even if admissible, would be insufficient to sustain the commissioner's decision because they do not amount to substantial evidence.

The plaintiff's reliance on *Lawrence* is misplaced. In *Lawrence*, our Supreme Court held that a nolo contendere plea and arrest report were not admissible in an administrative hearing on a suspension of a license after a fatal accident pursuant to General Statutes (Rev. to 1975) § 14-111 (c), which required a finding that the

---

[4] Although there was no plea of guilty entered by the plaintiff, her plea of nolo contendere resulted in the Florida court adjudging her guilty.

operator caused or contributed to the death. *Lawrence v. Kozlowski*, supra, 171 Conn. 711–12 n.4.

In this case, however, the trial court was reviewing the hearing officer's decision under the tenets of the compact, which provides in relevant part that "[t]he licensing authority in the home state . . . shall give the same effect to the conduct reported . . . as it would if such conduct had occurred in the home state, in the case of *convictions* for . . . (2) [d]riving a motor vehicle while under the influence of intoxicating liquor . . . ." (Emphasis added.) General Statutes § 14-111c, Article IV (a).

Under the compact, it is the out-of-state conviction that triggers the application of the compact. Therefore, the trial court properly determined that the "commissioner acts on the basis of an out-of-state conviction" and that it "does not matter how the conviction was obtained, whether by guilty plea, or by trial after a plea of not guilty, or, as in this case, by a finding of the court after a plea of nolo contendere."

The plaintiff further argues that even if the evidence of conviction was admissible, it did not amount to substantial evidence. "An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review." (Citations omitted; internal quotation marks omitted.) *Office of Consumer Counsel v. Dept. of Public Utility Control*, 246 Conn. 18, 36, 716 A.2d 78 (1998).

The hearing officer had the original traffic citation and an abstract of the court disposition, which indicated

that the plaintiff pleaded nolo contendere and was subsequently found guilty by the Florida trial court. The plaintiff did not dispute the information contained in the citation.[5] On review, the trial court found that "[s]ince it is the fact of the conviction that is relevant to the Connecticut commissioner's decision, not the nature of the plea that produced the conviction, the admission of evidence concerning that plea constituted no prejudice to the plaintiff." We agree with the trial court.

Because the original citation and the abstract of the court disposition were reliable and provided a substantial basis of fact from which the plaintiff's conviction could reasonably be inferred, we conclude that the trial court acted reasonably and did not abuse its discretion in upholding the decision of the hearing officer to consider the conviction of the plaintiff, which resulted from her nolo contendere plea, as a basis for suspending her license.

II

The plaintiff next claims that her due process rights were violated[6] because the hearing before the commissioner was limited to the issue of whether she was convicted of driving a motor vehicle while under the influence of alcohol in Florida. The plaintiff argues that

---

[5] See footnote 2.

[6] While the plaintiff indicates that her due process rights were violated, she does not indicate whether it was her due process rights under the United States constitution or the Connecticut constitution, nor does she cite any constitutional provision in support of her claim. Since the plaintiff failed to offer a separate analysis under the state constitution, "[w]e, therefore, choose to consider the claim solely under the federal constitution." *State* v. *Garvin*, 43 Conn. App. 142, 146 n.5, 682 A.2d 562 (1996), aff'd, 242 Conn. 296, 699 A.2d 921 (1997). In any event, "[o]ur Supreme Court has repeatedly held that, as a general rule, the due process clauses of both the United States and Connecticut constitutions have the same meanings and impose similar limitations. *State* v. *Brigandi*, 186 Conn. 521, 542, 442 A.2d 927 (1982)." (Internal quotation marks omitted.) *State* v. *Foster*, 45 Conn. App. 369, 388, 696 A.2d 1003, cert. denied, 243 Conn. 904, 701 A.2d 335 (1997).

the compact is unconstitutional on its face, or was applied unconstitutionally, in that the compact itself or the hearing officer did not allow the plaintiff a full hearing to contest various aspects of the out-of-state conviction, including procedural safeguards, the validity of the conviction and the underlying conduct.

"The fourteenth amendment to the United States constitution provides that the State [shall not] deprive any person of life, liberty, or property, without due process of law . . . . In order to prevail on his due process claim, the plaintiff must prove that: (1) he has been deprived of a property interest cognizable under the due process clause; and (2) the deprivation of the property interest has occurred without due process of law." (Internal quotation marks omitted.) *Tedesco* v. *Stamford*, 222 Conn. 233, 241, 610 A.2d 574 (1992). A driver's license, as a property interest, may not be suspended or revoked without due process of law. See *Bell* v. *Burson*, 402 U.S. 535, 542–43, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971); *State* v. *Washburn*, 34 Conn. App. 557, 565, 642 A.2d 70, cert. denied, 230 Conn. 912, 645 A.2d 1017 (1994). "[D]ue process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands." (Citation omitted; internal quotation marks omitted.) *Tedesco* v. *Stamford*, supra, 242.

In *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the Supreme Court indicated that to determine the level of procedural due process necessary, we must consider three factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedure used and the probable value, if any, of additional substitute procedural safeguards and

(3) the state's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. We conclude that the plaintiff's right to procedural due process was not violated under the compact.

Applying the factors to the present case, we conclude that a one year license suspension is not an unreasonable restriction on the use and enjoyment of the driver's license and its imposition is within reasonable limits. The risk of erroneous deprivation is rather low considering the other safeguards that exist. The state of Florida afforded the plaintiff the opportunity for a trial where she was represented by counsel. Furthermore, she had the opportunity to contest the findings or judgment of conviction by appeal in the Florida courts. Under the compact, the plaintiff was given a hearing in Connecticut, where again she was represented by counsel. This hearing was to determine whether she was indeed convicted in Florida of the offense of operating a motor vehicle while under the influence of alcohol.

Finally, the state's interest in promoting public safety, through the implementation of the compact, clearly outweighs the plaintiff's claimed right to a full hearing in Connecticut to contest the out-of-state conviction, which she had an opportunity to contest in Florida. The compact indicates that "[t]he continuance in force of a license to drive is predicated upon compliance with laws and ordinances relating to the operation of motor vehicles, in whichever jurisdiction the vehicle is operated." General Statutes § 14-111c, Article I (a) (3). The compact also provides that "[t]he safety of their streets and highways [of the party states] is materially affected by the degree of compliance with state and local ordinances relating to the operation of motor vehicles. . . . Violation of such a law or ordinance is evidence that

the violator engages in conduct that is likely to endanger the safety of persons and property." General Statutes § 14-111c Article I (a) (1) and (2). In addition, "Connecticut's statutory scheme [reflects] an unambiguous policy aimed at ensuring that our highways are safe from the carnage associated with drunken drivers." (Internal quotation marks omitted.) *State* v. *Washburn*, 34 Conn. App. 566.

Therefore, public policy, as well as the statute itself, dictates that public safety must take priority over an individual's right to have a second full hearing in Connecticut to contest the procedural safeguards and validity of the Florida conviction. We do not find, under these circumstances, that the plaintiff's due process rights were violated because the hearing before the commissioner was limited to whether she was convicted of driving a motor vehicle while under the influence of alcohol in Florida.

The plaintiff further argues that, because the compact provides that a violation is only evidence that the violator engages in conduct that is likely to endanger the safety of persons and property, a conviction in Florida does not require the commissioner to accept the conviction without holding a hearing. We are not persuaded. General Statutes § 14-227a mandates a one year suspension of a motor vehicle license if a person is convicted of operating a motor vehicle while under the influence of alcohol in Connecticut. The compact indicates that "[t]he continuance in force of a license to drive is predicated upon compliance with laws and ordinances . . . in whichever jurisdiction the vehicle is operated." General Statutes § 14-111c Article I (a) (3). It is clear that Connecticut considers a conviction of operating a motor vehicle while under the influence of alcohol to be conduct that is likely to endanger the safety of persons and property.

## III

The plaintiff next claims that the compact violates the equal protection clause of the United States constitution[7] or article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments.[8] Specifically, the plaintiff argues that since it was her first arrest for operating a motor vehicle while under the influence of alcohol she would, had the arrest taken place in Connecticut, have had the unequivocal right to apply for the alcohol education program under General Statutes § 54-56g, and, upon successful completion of the program, the charge would be dismissed and no suspension of her license would occur. The plaintiff further argues that she received unequal treatment from the commissioner compared to another citizen of Connecticut who also has been arrested for operating a motor vehicle while under the influence of liquor for the first time.

"When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution, the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute

---

[7] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. . . ."

[8] Article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." Because the plaintiff does not contend that she is entitled to any greater protection under the state constitution than under the federal constitution, we treat those provisions as embodying the same level of protection. *Lash* v. *Aetna Casualty & Surety Co.*, 236 Conn. 318, 329–30, 673 A.2d 84 (1996).

either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Internal quotation marks omitted.) *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 143, 717 A.2d 747 (1998).

The plaintiff does not claim that the statute impinges on a suspect class or a fundamental right,[9] nor is there a basis for such a claim. Participation in the alcohol education program in Connecticut is not a right, it is a discretionary disposition invoked by the court for those arrested in Connecticut for operating a motor vehicle while under the influence of alcohol. Because the granting of a request to participate in the program is discretionary, there is no denial to the plaintiff of a fundamental right. The plaintiff is also not a member of a suspect class. She is not being treated any differently from other individuals convicted of operating a motor vehicle while under the influence of alcohol in a foreign state who are reported to Connecticut in accordance with the compact. We conclude, therefore, that the rational basis analysis governs the plaintiff's claim.

"We next undertake the analytical predicate [of consideration of an equal protection claim, namely] . . . a determination of who are the persons similarly situated." (Internal quotation marks omitted.) *State* v.

[9] The plaintiff argues that the right to a driver's license is a fundamental right that is protected by strict scrutiny analysis. This argument is misplaced. The plaintiff's equal protection claim is based on the fact that she was denied the right to apply for the alcohol education program.

*Wright*, 246 Conn. 132, 141, 716 A.2d 870 (1998). The plaintiff's claim is predicated on a comparison of her Florida conviction for operating a motor vehicle while under the influence of alcoholic beverages and her subsequent administrative license suspension in Connecticut under the compact, § 14-111c, with a person convicted in Connecticut for operating while under the influence of liquor in violation of § 14-227a. In our opinion, these two classes are not similarly situated. People convicted under § 14-227a face a criminal sanction in Connecticut; however, people convicted under a similar foreign state statute face an administrative license suspension in Connecticut under the compact.

As in *Wright*, where the two classifications consisted of defendants convicted of two separate and distinct crimes, the plaintiff's claim in this case is also "ill-suited to the framework of equal protection analysis." *State v. Wright*, supra, 246 Conn. 143. Therefore, as in *Wright*, the plaintiff's claim, as a matter of analytical categorization, would have been brought more appropriately as a substantive due process claim. "As we often have done when confronted with ill conceived equal protection claims, however, we choose to proceed in the framework of equal protection analysis by [a]ssuming arguendo that the two categories . . . identified by the [plaintiff] are similarly situated with respect to the [statutory scheme] . . . . Doing so allows us to engage in a rational basis analysis that, for all material purposes, is indistinguishable from the analysis in which we would engage pursuant to a due process claim." Id., 143–44.

"Under the rational basis test, [t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. . . . In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification . . . the legislative facts

on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational . . . . Thus, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. . . . In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (Citations omitted; internal quotation marks omitted.) *Luce* v. *United Technologies Corp.*, supra, 247 Conn. 143–44.

The state has a legitimate interest in highway safety and a responsibility to protect its citizens from those who would drive on its roads while under the influence of alcohol, thereby placing themselves and others in harm's way. Operating a motor vehicle while under the influence of liquor, in violation of § 14-227a, results in a conviction, while a license suspension in Connecticut under the compact results in a license suspension and not a Connecticut conviction. The legislature rationally could have concluded that people, when facing a conviction under § 14-227a, should be entitled to apply for the alcohol education program. People facing an administrative license suspension under the compact, however, should not be entitled to apply for the alcohol education program because there is no Connecticut conviction involved. The fact that Florida does not offer an alcohol education program to first time offenders in Florida, as Connecticut does, is not relevant to this case. Therefore, we conclude that the compact does not violate the equal protection clause of the United States or the Connecticut constitutions.

## IV

The plaintiff next claims that "there was not substantial evidence to show that the Connecticut and Florida statutes are substantially similar pursuant to article IV of the compact." Specifically, the plaintiff argues that her license cannot be suspended under the compact unless there is a finding by the trial court, or evidence introduced at the hearing, that the statutes are substantially similar. The plaintiff cites General Statutes § 52-163a for the proposition that the trial court, in determining the law of a foreign jurisdiction, must find facts based on evidence presented at the hearing. We are not persuaded.

The plaintiff's argument that the trial court must find facts regarding whether the Connecticut statute pertaining to operating a motor vehicle while under the influence of alcohol, § 14-227a, and the Florida statute pertaining to operating a motor vehicle while under the influence of alcohol, Florida Statutes § 316.193, are substantially similar is misplaced. Article IV (c) of § 14-111c does not mandate a comparison of the party states' statutes with each other.

Article IV (c) of § 14-111c provides: "If the laws of a *party state* do not provide for offenses or violations denominated or described in precisely the words employed in subsection (a) of this article, *such party state shall construe* the denominations and descriptions appearing in said subsection (a) as being applicable to and identifying those offenses or violations of a substantially similar nature, and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article."[10] (Emphasis added.)

[10] The applicable provision of subsection (a) is article IV (a) (2) of § 14-111c, which provides in relevant part that "[d]riving a motor vehicle while under the influence of intoxicating liquor . . . that renders the driver incapable of safely driving a motor vehicle . . . ."

Both Connecticut and Florida are party states. The Connecticut legislature, however, has already determined that § 14-227a is comparable to article IV (a) of § 14-111c. See General Statutes § 14-111d (c) (2). Article IV (c) of § 14-111c does not mandate that the Connecticut court determine whether the Florida offense or violation, § 316.193, is substantially similar to the compact; instead, it mandates that the "party state," in this case Florida, identify those offenses that are substantially similar in nature to those listed in article IV (a) of § 14-111c. In this case, the authorities in Florida sent the plaintiff's conviction to the Connecticut commissioner pursuant to the compact. We conclude, therefore, that article IV (c) of § 14-111c does not require the trial court to make findings of fact regarding whether each party state's statutes are substantially similar.

V

The plaintiff next claims that exhibit B, the report of conviction from Florida, was defective on its face because it did not comply with the mandates of article III of the compact.

Article III of the compact provides: "The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted; describe the violation specifying the section of the statute, code or ordinance violated; identify the court in which action was taken; indicate whether a plea of guilty or not guilty was entered, or the security; and shall include any special findings made in connection therewith."

The plaintiff does not argue that any specific item listed in article III of the compact was not reported by the authorities in Florida. Instead, the plaintiff argues

that "[a]rticle III is essentially the same as subsection (c) of § 14-227b, which requires that the report set forth the grounds for probable cause to make the arrest." This argument is misplaced. Article III of the compact does not mention § 14-227b (c), which applies to probable cause in a criminal proceeding.

In essence, the plaintiff is again arguing that she should have been afforded a full hearing to contest the various aspects of the Florida conviction, which we already addressed. The Florida "DUI uniform traffic citation" entered into evidence at the hearing in Connecticut contained the following information: the name, address and driver's license number of the plaintiff, the name of the offense and the specific statute number, the designated number of the city and the county court where the case was heard, including the name of the presiding judge, the fact that a plea of nolo contendere was entered and a finding of guilty entered. In addition, the penalty imposed was recorded. There were no special findings listed and none was alleged to have been made. We find that the information contained in the report from Florida complied with the requirements set forth in article III of the compact.

VI

The plaintiff finally claims that the suspension of her license violated the double jeopardy clause of the United States constitution.[11] We disagree.

[11] The plaintiff also claims a violation of the double jeopardy clause of the Connecticut constitution. "Although the Connecticut constitution does not include a specific double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution has been held to encompass protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Belcher*, 51 Conn. App. 117, 119 n.7, 721 A.2d 899 (1998). The plaintiff, however, did not provide a separate analysis under the Connecticut constitution and, therefore, we are not bound to consider this claim. *State* v. *Blocker*, 46 Conn. App. 734, 738 n.7, 700 A.2d 1186, cert. denied, 243 Conn. 946, 704 A.2d 799 (1997). In any event, we have consistently held that the Connecticut constitution affords no greater protection than the United States constitution's double jeopardy clause. Id.

"The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb . . . .' The double jeopardy clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *State* v. *Hickam*, 235 Conn. 614, 617–18, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996). This constitutional guarantee is applicable to the states through the due process clause of the fourteenth amendment. See *Benton* v. *Maryland,* 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *State* v. *Woodson,* 227 Conn. 1, 7, 629 A.2d 386 (1993).

The plaintiff was arrested and convicted in Florida for operating a motor vehicle while under the influence of alcoholic beverages in violation of Florida Statutes § 316.193. As a result of this criminal conviction, the plaintiff was fined, placed on probation and had her driving privileges revoked for a period of six months in Florida. In addition, the plaintiff was subjected to a one year administrative license suspension in Connecticut under the compact.

The plaintiff argues that the commissioner's suspension of the plaintiff's license to operate a motor vehicle in Connecticut under the compact is a violation of the double jeopardy clause because the suspension stems from her conviction of driving while under the influence of alcohol in Florida, an offense for which she has already been punished by the state of Florida. The plaintiff further argues that her suspension under the compact is for penal purposes because it is borrowed from § 14-227 (a).

In *United States* v. *Halper,* 490 U.S. 435, 448–49, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), the United States

Supreme Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution." (Emphasis added.) Our Supreme Court had the opportunity to interpret the holding of *Halper* in *State* v. *Hickam*, supra, 235 Conn. 614. In *Hickam*, our Supreme Court found that "[t]he majority of courts that have addressed the issue of whether the imposition of a civil sanction constitutes punishment for purposes of the double jeopardy clause . . . have rejected the notion that *Halper* intended to characterize as punishment all civil or administrative sanctions that have any deterrent effect. . . . The majority of courts have also concluded that administrative sanctions that have the remedial purpose of advancing public safety interests do not constitute punishment for purposes of double jeopardy analysis." (Citations omitted.) Id., 621. Therefore, the court concluded that "*Halper* stands for the proposition that a civil or administrative sanction that serves a legitimate remedial purpose and is related rationally to that purpose does not give rise to a double jeopardy violation even if the sanction has some deterrent effect." Id., 623. We conclude that the compact is remedial for double jeopardy purposes.

The purpose of the compact, as set forth in article I (a) (1) and (2) of § 14-111c, is to promote safety because "[t]he safety of [a party state's] streets and highways is materially affected by the degree of compliance with state and local ordinances relating to the operation of motor vehicles" and "[v]iolation of such a law or ordinance is evidence that the violator engages in conduct that is likely to endanger the safety of persons and property." We conclude, therefore, that the suspension

of the plaintiff's operator's license pursuant to the compact is an administrative sanction, remedial in nature advancing the interests of public safety, and, as such, does not violate the plaintiff's right against double jeopardy.

The judgment is affirmed.

In this opinion the other judges concurred.