PATRICK BARD *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 19788)

Spear, Mihalakos and Freedman, Js.

Argued October 23, 2000—officially released February 27, 2001

*Michael P. Deneen,* for the appellant (plaintiff).

*Robert L. Marconi*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

FREEDMAN, J. The plaintiff, Patrick Bard, appeals from the judgment of the trial court dismissing his appeal from the decision by the defendant commissioner of motor vehicles (commissioner). The commissioner had ordered the suspension of the plaintiff's motor vehicle operator's license for one year, pursuant to General Statutes § 14-111c, the driver license compact (compact), following his conviction in Maine for operating a motor vehicle while under the influence of alcohol.

On appeal, the plaintiff claims that the court improperly (1) upheld the hearing officer's admission into evidence of the documents received from the state of Maine as a basis for suspending the plaintiff's license, (2) drew inferences from the evidence where none had been made by the hearing officer and there was inadequate evidence of the plaintiff's conduct in the record, (3) shifted the burden of proof from the commissioner to the plaintiff by requiring him to assert that the information on the traffic citation was untrue rather than requiring the commissioner to meet the requirements of § 14-111c, (4) found that the requirements of article III of § 14-111c were met and (5) found that the state of Maine had complied with article IV of the compact by identifying the offense that was of a substantially similar nature to that listed in article IV. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On February 11, 1998, the plaintiff, a holder of a Connecticut motor vehicle operator's license, was arrested in Maine for the offense of operating under the influence of intoxicants in violation

of Me. Rev. Stat. Ann. tit. 29-A, § 2411 (West 1996). The plaintiff signed a uniform summons and complaint, which directed that he appear at the District Court in Waterville, Maine, on April 15, 1998. On that date, the plaintiff appeared by counsel and entered a plea of "Not guilty/Deny." On May 20, 1998, the plaintiff changed his plea to "Guilty." The plaintiff was fined $400 and ordered to serve three days in the Kennebec County jail. The plaintiff's right to operate a motor vehicle in Maine was also suspended for ninety days. On or about June 8, 1998, the adjudications section of the secretary of state, bureau of motor vehicles, for the state of Maine mailed various court documents to the commissioner.

By letter dated July 31, 1998, the commissioner notified the plaintiff that he was summoned to appear at an administrative hearing on September 23, 1998, regarding the Maine proceedings. The notice stated that the purpose of the hearing was "limited to whether you have been convicted of a serious motor vehicle violation in a member state jurisdiction of the Driver License Compact for which Connecticut is required to take suspension action." The notice further stated that the commissioner "may determine and order that your operator's license be suspended as it would had such conduct resulted in a conviction in Connecticut."

Following the hearing, the commissioner suspended the plaintiff's operator's license for one year. The plaintiff appealed from that decision to the Superior Court, which dismissed the appeal. The plaintiff then filed the present appeal to this court.

I

The plaintiff first contends that the court improperly upheld the hearing officer's admission into evidence of the photocopy of the Maine traffic citation at the administrative hearing. We disagree.

We initially note that "administrative agencies are not strictly bound by technical rules of evidence. . . . In the particular situation considered here, the rule generally followed is that documents giving notice of conviction of a traffic violation, forwarded by the state in which the violation occurred, need not be formally exemplified to sustain the suspension or revocation of an operator's license by the home state." (Citations omitted.) *Hickey* v. *Commissioner of Motor Vehicles*, 170 Conn. 136, 141, 365 A.2d 403 (1976). In *Hickey*, a case also involving a Maine conviction for operating under the influence of intoxicating liquor, our Supreme Court upheld the admission into evidence of photostatic copies of the abstract of the record of conviction in Maine and the notice of suspension in Maine, which had been sent to the commissioner of motor vehicles. The court stated that the "photostatic copy reproduced the original abstract, which bore the name and address of the plaintiff, the nature of the offense, the judgment rendered, the suspension of the right to operate in Maine, and certification by the clerk as a true abstract of the Maine District Court. The copy of the notice of suspension showed the record of conviction upon appeal and was signed by the secretary of the state. Thus, the photostatic copies provided adequate notice of the conviction of the plaintiff for the offense of operating a motor vehicle while under the influence of intoxicating liquor." Id., 141–42.

Similarly, in *Kostrzewski* v. *Commissioner of Motor Vehicles*, 52 Conn. App. 326, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999), a case involving a Florida conviction for operating a motor vehicle while under the influence of alcoholic beverages, the plaintiff challenged the admission into evidence of an exhibit that contained several documents. Those documents included " 'the original traffic ticket citing the plaintiff on the drunk driving charge.' The Florida 'DUI Uniform

Traffic Citation' provide[d] the date and time of the offense, the statute violated and the blood alcohol level of the plaintiff, and contain[ed] the signatures of the arresting officer and the plaintiff. The other side of the document [was] an abstract of the court disposition and indicate[d] the name of the presiding judge and [contained] an original signature, although there [was] no indication of the signer's title or position. The information from the Florida trial court indicate[d] that the plaintiff pleaded nolo contendere, was found guilty, fined and placed on probation and had her driving privileges revoked in Florida for a period of six months." Id., 331. We held in *Kostrzewski* that the information was reliable and probative and, therefore, properly admitted. Id., 333.

In the present case, the hearing officer admitted a photocopy of the Maine uniform summons and complaint. That document, signed by the plaintiff and the arresting police officer, indicates the date and time of the offense, and specifies that the violation was operating under the influence in violation of Me. Rev. Stat. Ann. tit. 29-A, § 2411 (West 1996). The reverse side of the document indicates the plaintiff's initial plea of not guilty on April 15, 1998, followed by the plaintiff's change in his plea to guilty on May 20, 1998. The document further indicates that a $400 fine was imposed on the plaintiff, that he was sentenced to three days at the Kennebec County jail and that his license was suspended for ninety days. The document purports to be attested, as it contains a stamp indicating that it is a true copy and is signed.[1] The hearing officer also admitted the Maine notice of suspension dated May 20, 1998, which was signed by the judicial authority and the plaintiff. In light of the foregoing authorities, we conclude, as

---

[1] The identity and title of the individual who signed the document are unclear.

did the court, that the Maine documents were properly admitted into evidence.

## II

The plaintiff next argues that the court improperly drew inferences that were not drawn by the hearing officer and that there was inadequate evidence of the plaintiff's conduct in the record. We disagree.

"[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citation omitted; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000).

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. [See] General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . ." (Internal quotation marks omitted.) Id. "If . . . the specific evidence cited in support of an administrative officer's ultimate factual

finding is inadequate to support that ultimate factual conclusion, a reviewing court should search the record of the entire proceedings to determine whether it does in fact contain substantial evidence from which the ultimate factual finding could reasonably be inferred." *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 601, 590 A.2d 447 (1991).

Article IV (a) of the compact, § 14-111c, titled "Effect of Conviction," provides in relevant part: "The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the *conduct* reported, pursuant to article III of this compact, as it would if such *conduct* had occurred in the home state, in the case of convictions for . . . (2) [d]riving a motor vehicle while under the influence of intoxicating liquor or narcotic drug, or under the influence of any other drug to a degree that renders the driver incapable of safely driving a motor vehicle . . . ." (Emphasis added.)

According to the plaintiff, because Maine makes it an offense to drive with a blood alcohol content (BAC) of 0.08 percent[2] and Connecticut makes it an offense to drive with a BAC of 0.10 percent,[3] the plaintiff's

[2] Me. Rev. Stat. Ann. tit. 29-A, § 2411 (1) (West 1996), provides: "A person commits [operating under the influence], which is a Class D crime unless otherwise provided, if that person operates a motor vehicle:

"A. While under the influence of intoxicants; or

"B. While having a blood-alcohol level of 0.08% or more."

[3] General Statutes (Rev. to 1997) § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while

conduct, had it occurred in Connecticut, would not necessarily have resulted in a conviction for operating a motor vehicle while under the influence of intoxicating liquor. The plaintiff contends that no evidence was presented at the administrative hearing, and the hearing officer made no findings as to the *conduct* of the plaintiff. Specifically, the plaintiff points out that the hearing officer made no findings regarding the plaintiff's BAC. The plaintiff argues, therefore, that the court improperly drew inferences to reach its conclusion that the plaintiff's BAC exceeded Connecticut's legal limit.

On the basis of our review of the record, we conclude that the commissioner's decision to suspend the plaintiff's license is supported by substantial evidence. Specifically, the record contains a substantial basis of fact to support the reasonable inference that the plaintiff submitted to a blood alcohol test and failed it, and that his BAC was, in fact, over Connecticut's legal limit of 0.10 percent. Although the plaintiff's BAC is not indicated on the documents received from Maine, the court was required to search the record to determine whether it contained substantial evidence from which that ultimate factual finding reasonably could be inferred. In that regard, the court reasonably inferred, on the basis of the fine and the punishment imposed on the plaintiff, that his BAC was greater than 0.15 percent and, therefore, that his conduct in Maine would have resulted in a conviction in Connecticut.[4]

The Maine statute provides, in relevant part, that an individual with no previous operating under the influ-

---

the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[4] We conclude in this case that the commissioner's decision was supported by substantial evidence that the plaintiff's BAC was over .15 percent and, thus, his conduct was in violation of Connecticut law. We therefore need not decide whether a Connecticut resident's license could be suspended if another state established a culpable blood alcohol level lower than Connecticut's, and a Connecticut resident is convicted of driving under the influence solely on that basis.

ence offenses within a ten year period shall receive a "fine of not less than $400, except that if the person failed to submit to a test, a fine of not less than $500 . . . ." Me. Rev. Stat. Ann. tit. 29-A, § 2411 (5) (A) (1) (West 1996). On May 20, 1998, the plaintiff was ordered to pay a fine of $400. The court reasonably inferred, on the basis of the fine, that the plaintiff did not refuse to take the test; rather, the plaintiff took the test and failed. The Maine statute further provides that a defendant shall be incarcerated for "[n]ot less than 48 hours" when the defendant has a BAC of 0.15 percent or more, was exceeding the speed limit by thirty miles per hour or more, eluded or attempted to elude an officer or was operating with a passenger under twenty-one years of age.[5] Here, the plaintiff was sentenced to three days in the Kennebec County jail. The court noted that the uniform summons and complaint detailed only one offense, namely, operating under the influence. The court concluded that because the summons did not specify a charge of speeding or of eluding an officer, and because there was no evidence of anyone being with the plaintiff, it can be inferred that the plaintiff had a BAC over 0.15 percent. We cannot say that the inferences drawn and the conclusion reached by the court were not reasonably supported by the record.

---

[5] Me. Rev. Stat. Ann. tit. 29-A, § 2411 (5) (West Sup. 1998), titled "Penalties," provides in relevant part: "The following minimum penalties apply and may not be suspended:

"A. For a person having no previous OUI offenses within a 10-year period:

"(1) A fine of not less than $400, except that if the person failed to submit to a test, a fine of not less than $500;

"(2) A court-ordered suspension of a driver's license for a period of 90 days; and

"(3) A period of incarceration as follows:

"(a) Not less than 48 hours when the person:

"(i) Was tested as having a blood-alcohol level of 0.15% or more;

"(ii) Was exceeding the speed limit by 30 miles per hour or more;

"(iii) Eluded or attempted to elude an officer; or

"(iv) Was operating with a passenger under 21 years of age; and

"(b) Not less than 96 hours when the person failed to submit to a test at the request of a law enforcement officer . . . ."

## III

The plaintiff next claims that the court improperly shifted the burden of proof to him to dispute the lack of information in the traffic citation. According to the plaintiff, by requiring him to assert that the information in the uniform summons and complaint was untrue, the court improperly shifted the analysis away from whether, in reviewing the record, there was substantial evidence presented by the commissioner to support the agency's decision. We disagree.

Nothing in the record supports the plaintiff's assertion that the court improperly shifted the burden of proof to him. In its memorandum of decision, the court stated: "It is important to note that the plaintiff, although he objected to the admission of the documents at the [motor vehicle] hearing and continues to contest the admission of those documents, has never asserted that the information contained therein was incorrect and never has denied that the signatures on the documents were his." We do not read that statement as requiring the plaintiff to prove that the information in the summons and complaint was untrue.

As we determined in part I of this opinion, the court properly upheld the admission of the Maine documents as reliable and probative. See *Kostrzewski* v. *Commissioner of Motor Vehicles*, supra, 52 Conn. App. 333. We have further held that the agency's decision was supported by substantial evidence. Id., 335; see *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 343. We therefore conclude that the plaintiff's claim that the court improperly shifted the burden of proof is without merit.

## IV

The plaintiff next claims that the court improperly concluded that the requirements of article III of the

compact were met. Specifically, the plaintiff argues that the information reported in this case only identified the person arrested and not the person who was convicted, and that the statute under which the plaintiff was convicted is not identified at all. The plaintiff argues, therefore, that the requirements of article III of § 14-111c[6] were not satisfied. We disagree.

As we previously stated, the Maine uniform summons and complaint indicates that the plaintiff was charged with violating Me. Rev. Stat. Ann. tit. 29-A, § 2411 (West 1996). The reverse side of that document indicates the plaintiff's guilty plea on May 20, 1998. There is nothing to indicate that the plaintiff pleaded guilty to anything other than the charge specified on the first side of the uniform summons and complaint. The court, therefore, properly held that the requirements of article III of the compact were met.

V

The plaintiff next argues that the court improperly found that the state of Maine had complied with article IV (c) of § 14-111c.[7] Specifically, he argues that by failing to identify which offenses in Maine are of a substantially

---

[6] Article III of General Statutes § 14-111c, titled "Reports of Conviction," provides: "The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted; describe the violation specifying the section of the statute, code or ordinance violated; identify the court in which action was taken; indicate whether a plea of guilty or not guilty was entered, or the security; and shall include any special findings made in connection therewith."

[7] Article IV (c) of General Statutes § 14-111c provides: "If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subsection (a) of this article, such party state shall construe the denominations and descriptions appearing in said subsection (a) as being applicable to and identifying those offenses or violations of a substantially similar nature, and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article."

similar nature to those listed in article IV of the compact, the state of Maine has made the compact unconstitutionally vague and, therefore, unenforceable. We disagree.

In *Kostrzewski* v. *Commissioner of Motor Vehicles*, supra, 52 Conn. App. 343, the plaintiff, who had been convicted of operating a motor vehicle while under the influence of alcoholic beverages in Florida, argued that her Connecticut license could not be suspended under the compact unless there was a finding by the trial court, or evidence introduced at the hearing, that the Florida and Connecticut statutes were substantially similar. We rejected the plaintiff's argument, stating in part that "[a]rticle IV (c) of § 14-111c does not mandate that the Connecticut court determine whether the Florida offense or violation . . . is substantially similar to the compact; instead, it mandates that the 'party state,' in this case Florida, identify those offenses that are substantially similar in nature to those listed in article IV (a) of § 14-111c. In this case, the authorities in Florida sent the plaintiff's conviction to the Connecticut commissioner pursuant to the compact. We conclude, therefore, that article IV (c) of § 14-111c does not require the trial court to make findings of fact regarding whether each party state's statutes are substantially similar." Id., 344.

In the present case, the authorities in Maine sent the plaintiff's conviction to the Connecticut commissioner pursuant to the compact. We conclude, on the basis of *Kostrzewski*, that the court properly found that Maine had complied with article IV (c) of the compact.

The judgment is affirmed.

In this opinion the other judges concurred.